UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JORGE BAUTISTA-AVALOS,

Petitioner,

v.

MICHAEL BERNACKE, *et al*.,

Respondents.

Case No. 2:25-cv-01987-RFB-BNW

**ORDER**

Pending before the Court is Petitioner Jorge Bautista-Avalos' (ECF No. 3) Motion for Preliminary Injunction. For the following reasons, the Court grants the Motion.

## I.    BACKGROUND

Petitioner Jorge Bautista-Avalos is currently detained at the Nevada Southern Detention Center (NSDC) in the custody of Immigration and Customs Enforcement (ICE) and has been detained there since September 16, 2025.

Petitioner is a citizen of Mexico who has resided in the United States continuously since 2007. He lives in Marcola, Oregon with his wife and their three daughters, ages 15, 17, and 23, all of whom are U.S. citizens. He has worked as a head ranch hand for more than 18 years, and his employer and community members describe him as honest, hardworking, and indispensable.

On September 15, 2025, while Petitioner was visiting Las Vegas, he was taken into custody by local police based on an allegation of misdemeanor domestic battery and detained at Clark County Detention Center (CCDC). ECF No. 2 at 2-5. CCDC sent an email inquiry to ICE regarding Petitioner, and ICE issued an immigration detainer (Form I-247A) with CCDC. Id. The Clark County District Attorney's Office rejected the domestic battery charge the same day. Id. Petitioner

1    has no other criminal history. ECF No. 2-2 at 7-8.

2         Pursuant to the immigration detainer, Petitioner was transferred from CCDC custody

3    directly into ICE custody on September 16, 2025, and placed into removal proceedings pursuant

4    to 8 U.S.C. § 1229a by the Department of Homeland Security (DHS). ECF No. 2 at 2-5. He was

5    issued a Notice to Appear (NTA) and charged with being inadmissible under 8 U.S.C. §

6    1182(a)(6)(A)(i) as a noncitizen who entered the United States without being admitted or paroled,

7    and under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant not in possession of a valid unexpired

8    immigrant visa or other valid entry document at the time of application for admission. Id. Removal

9    proceedings are ongoing.

10        Petitioner requested a custody redetermination hearing (*i.e.* bond hearing) before the Las

11   Vegas Immigration Court, which was held on October 7, 2025. ECF No. 2-3 at 2-4. Upon

12   consideration of the evidence, the Immigration Judge (IJ) found Petitioner "does not present a

13   danger to persons or property, is not a threat to the national security, and does not pose a risk of

14   flight." Hernandez v. Sessions, 872 F.3d 976, 982 (9th Cir. 2017) (quoting In re Guerra, 241 I. &

15   N. Dec. 37, 38 (B.I.A. 2006)). Accordingly, the IJ found Petitioner would be entitled to release on

16   bond under 8 U.S.C. § 1226(a) in the amount of $3,500 with alternatives to detention (ATD) at the

17   discretion of DHS. Id. at 4-5. However, the IJ cited the Bureau of Immigration Appeals (BIA)'s

18   binding decision in Matter of Yajure-Hurtado, 29 I&N Dec. 216 (BIA 2025), issued on September

19   9, 2025, and its holding that "an alien who is charged with inadmissibility . . . just like [Petitioner]

20   is subject to mandatory detention," such that, post-Hurtado, an immigration judge has no

21   "authority to redetermine the custody conditions of an alien who crossed the border unlawfully,

22   without inspection[.]" Id. Accordingly, the IJ denied Petitioner bond and issued its finding that

23   Petitioner would be entitled to release on bond under § 1226(a) as an alternative finding. Id.

24        The BIA's decision in Hurtado is consistent with DHS' new interpretation of 8 U.S.C. §

25   1225 as mandating the detention of all undocumented noncitizens in the U.S. pending the

26   resolution of their removal proceedings—which can take months or years—no matter how long

27   they have resided in the country, without consideration of whether the government has a legitimate

28   interest in detaining them. This policy, which DHS, in conjunction with the Department of Justice,

- 2 -

adopted on July 8, 2025,[1] subjects *millions* of undocumented residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[2] The Court fully incorporates by reference the statutory and regulatory background relevant to this new mandatory detention policy set forth in its ruling in Vazquez. 2025 WL 2676082, at *3-5.

The overwhelming majority of district courts across the country, including this Court, that have considered DHS and the BIA's new statutory interpretation have found it incorrect and unlawful. See Maldonado Vazquez v. Feeley, 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025) (finding the statutory text and "canons of statutory interpretation, including the legislative history, regulations, and long history of consistent agency practice, as well as the doctrine of constitutional avoidance" demonstrate the government's new reading of § 1225(b)(2) is likely unlawful); see also Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.") (collecting cases).

Petitioner is the sole provider for his family, while his wife remains at home caring for their three children. His ongoing detention pursuant to Respondents' new detention policy is depriving his family of income and causing his wife and daughters significant mental and emotional distress.

## II.    PROCEDURAL HISTORY

On October 16, 2025, Petitioner commenced this action by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging the lawfulness of his detention under the Immigration and Nationality Act (INA) and Due Process Clause of the Fifth Amendment. ECF

---

[1] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[2] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

1    No. 1. Petitioner concurrently filed the instant Motion for Preliminary Injunction. ECF Nos. 3. The

2    Court ordered service and set a briefing schedule on the Petition and Motion. ECF Nos. 4.

3    Respondents filed their opposition to the Motion on October 24, 2025.

4        The Court's Order on the Motion for Preliminary Injunction follows.

5

6    **III.    LEGAL STANDARDS**

7        **A. Preliminary Injunction**

8        Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary

9    injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an

10   extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled

11   to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain such

12   relief a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that

13   the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the

14   balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells

15   Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended

16   (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

17       The Ninth Circuit uses a sliding scale variant of the Winter standard: the "serious

18   questions" test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011)

19   (affirming the continued viability of this doctrine post-Winter). According to this test, "serious

20   questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can

21   support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a

22   likelihood of irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts

23   in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one

24   element may offset a weaker showing of another." Recycle for Change v. City of Oakland, 856

25   F.3d 666, 669 (9th Cir. 2017).

26       **B. § 2441 Petition for Writ of Habeas Corpus**

27       The Constitution guarantees that the writ of habeas corpus is "available to every individual

28   detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S.

Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." <u>I.N.S. v. St. Cyr</u>, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. <u>Zadvydas v. Davis</u>, 533 U.S. 678, 687 (2001); <u>see also</u> <u>Demore v. Kim</u>, 538 U.S. 510, 517 (2003).

## IV.    DISCUSSION

As a threshold matter, the Court finds it appropriate to decide this Motion without having held an evidentiary hearing or heard oral argument. In the Ninth Circuit, whether to hold an evidentiary hearing or hear oral argument on a preliminary injunction is a matter of the district court's discretion. <u>See</u>, <u>e.g.</u>, <u>Stanley v. Univ. of S. California</u>, 13 F.3d 1313, 1326 (9th Cir. 1994) (citations omitted) (refusal to hold a preliminary injunction hearing "is not an abuse of discretion if the parties have a full opportunity to submit written testimony and to argue the matter.").

Here, the parties have not requested oral argument or an evidentiary hearing. <u>See</u> <u>id.</u> (noting the failure to request an evidentiary hearing may constitute waiver). Additionally, the Court finds there are no disputes of fact material to the request for preliminary relief that would necessitate an evidentiary hearing. Rather, the opposition by Respondents raises solely legal issues, and this Court has heard oral arguments on these issues from Respondents' counsel in multiple related habeas matters.[3] For those reasons and considering the urgent need for injunctive relief where Petitioner's liberty is at stake, the Court finds a preliminary injunction ruling without a hearing is

---

[3] <u>See</u>, <u>e.g.</u>, <u>Herrera v. Knight</u>, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); <u>Vazquez v. Feeley</u>, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); <u>Roman v. Noem</u>, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); <u>Carlos v. Noem</u>, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); <u>E.C. v. Noem</u>, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); <u>Perez Sanchez v. Bernacke</u>, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025).

1    warranted in this case.

2        **A.  Jurisdiction**

3        As an initial matter, the Court has habeas jurisdiction to review Petitioner's challenge to

4    the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA,

5    8 U.S.C. § 1252 do not apply, as discussed and held by the Court in granting relief to similarly

6    situated petitioners, which the Court fully incorporates by reference. See Vazquez, 2025 WL

7    2676082, at *7-9; Roman, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211, at *5. Further, 8

8    U.S.C. 1226(e) does not apply to preclude this Court's review, because the Ninth Circuit has held

9    that while the Attorney General's "discretionary judgment" is not subject to review, claims that the

10   discretionary process itself is legally and constitutional flawed are "cognizable in federal court on

11   habeas because they fit comfortably within the scope of § 2241." Gutierrez-Chavez v. INS, 298

12   F.3d 825, 829 (9th Cir. 2002).

13       **B.  Administrative Exhaustion**

14       The Court fully incorporates by reference its prior finding in similar cases that

15   administrative exhaustion before the BIA is excused as futile. See Herrera, 2025 WL2481792, at

16   *7-8; Vazquez, 2025 WL 2676082, at *9-10.

17       **C.  Preliminary Injunction**

18       The Court now turns to the analysis under the Winter factors.

19           ***i.  Likelihood of Success or Serious Questions***

20       First, the Court finds Petitioner has satisfied the most important Winter factor: he is likely

21   to succeed on the merits of his Petition for Writ of Habeas Corpus, because (1) § 1226(a), not §

22   1225(b)(2), applies to him, and therefore his detention without the opportunity for release on bond

23   violates the INA and its implementing regulations, and (2) his detention without the opportunity

24   for release on bond violates his due process rights. See Matsumoto v. Labrador, 122 F.4th 787,

25   804 (9th Cir. 2024) (likelihood of success on the merits is the most important factor in a

26   preliminary injunction analysis); see also Baird v. Bonta, 81 F.4th 1036, 1042 (9th Cir. 2023)

27   (likelihood of success is especially important where a plaintiff seeks a preliminary injunction

28   because of an alleged constitutional violation).

1    The Court fully incorporates by reference its reasoning and holding regarding the statutory

2    question from Vazquez. WL 2676082, at *11-16. Again, the Court rejects Respondents' statutory

3    interpretation, and finds Petitioners are detained under § 1226(a).

4    Respondents assert the Court should reconsider its statutory interpretation in Vazquez, and

5    instead adhere to the BIA's reasoning in Hurtado, and follow the minority of district courts that

6    have adopted the government's new reading of 8 U.S.C. § 1225(b)(2). See, e.g., Pena v. Hyde, No.

7    CV 25-11983-NMG, 2025 WL 2108913 (D. Mass. July 28, 2025); Chavez v. Noem, No. 3:25-

8    CV-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025). The Court is not persuaded.

9    First, Respondents assert the Court should afford substantial weight to the BIA's decision

10    in Hurtado, citing Skidmore v. Swift & Co, 323 U.S. 134 (1944). Under Skidmore, the weight to

11    be afforded to an agency's interpretation by a federal court depends "upon the thoroughness

12    evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later

13    pronouncements." Skidmore, 323 U.S. at 140. The Court does not find the BIA's reasoning in

14    Hurtado valid for all the reasons discussed by this Court in Vazquez. WL 2676082, at *11-16.

15    Moreover, Hurtado is inconsistent with decades of agency practice, and departs from its own

16    decision designated as precedential as recently as August of this year. See Matter of Akhmedov,

17    29 I. & N. Dec. 166 (BIA 2025) (stating unequivocally that a noncitizen who entered the country

18    without inspection in January 2022 was detained pursuant to 8 U.S.C. § 1226(a)); id. at 116 n.1

19    (on August 4, 2025, the Attorney General designated Akhmedov "as precedent in all proceedings

20    involving the same issue or issues."). Accordingly, this Court finds the BIA's new interpretation

21    of § 1225(b)(2) in Hurtado is unpersuasive and should be afforded little weight under Skidmore.

22    See also Murillo-Chavez v. Bondi, 128 F.4th 1076, 1087 (9th Cir. 2025) (noting that after Loper

23    Bright, courts may only look to agency interpretation as persuasive and "may not defer to an

24    agency interpretation of the law simply because a statute is ambiguous.") (citing Loper Bright

25    Enters. v. Raimondo, 603 U.S. 369, 413 (9th Cir. 2024)).

26    Similarly, the district courts' reasoning in Pena and Chavez does not persuade this Court.

27    In Pena, the court did not substantially engage in statutory interpretation of §§ 1225(b)(2) versus

28    1226(a); instead, the case turned on the status of the petitioner's I-130 petition which is not relevant

here. 2025 WL 2108913, at *1-2. Similarly, the district court in <u>Chavez</u> agreed with Respondents' expansive interpretation of § 1225(b) without meaningfully contending with the canons of statutory interpretation this Court—and dozens of other federal courts—considered in rejecting that interpretation. 2025 WL 2730228, at *4-5.

Finally, neither decision addressed the due process problems that arise from Respondents' interpretation of § 1225(b) as applying without distinction to noncitizens "present and residing within the county's borders" and noncitizens apprehended at or near the border, *i.e.* "arriving" noncitizens. <u>Vazquez</u>, 2025 WL 2676082, at *15 (citing <u>Zadvydas</u>, 533 U.S. at 693-94). Noncitizens residing in the U.S. have more due process protections than "arriving" noncitizens under longstanding Supreme Court precedent. <u>Id.</u> As this Court previously held, "serious constitutional concerns" arise from the application of § 1225(b)(2) to Petitioner and similarly situated noncitizens regardless of their years of residence in the country, given the lack of procedural protections under the § 1225 mandatory detention scheme. <u>Id.</u> The decisions Respondents cite neglected to address this due process problem. <u>See Chavez</u>, 2025 WL 2730228 (mentioning but not addressing the petitioners' procedural due process challenge to their detention without bond hearings); <u>Pena</u>, 2025 WL 2108913 (finding the petitioner's detention comported with due process and citing <u>Dep't of Homeland Sec. v. Thuraissigiam</u>, 591 U.S. 103 (2020), without contending with the distinction between "arriving aliens" and those who have "effected an entry" discussed in <u>Thuraissigiam</u>, 591 U.S. at 138-40).

In sum, the Court is not persuaded by Respondents' cited authorities. The Court finds that Petitioner will likely succeed in establishing that he is detained under § 1226(a), not § 1225(b)(2), and that his prolonged detention without the opportunity for release on bond violates his due process rights.

### ii. *Irreparable Harm*

The next factor requires a showing "that irreparable harm is likely, not just possible" in the absence of an injunction. <u>Alliance for the Wild Rockies</u>, 632 F.3d at 1131. Petitioner clearly faces irreparable harm in the absence of judicial intervention. It follows "inexorably" from this Court's conclusion that Petitioner's detention without bond likely violates his due process rights that he

1    has carried his burden as to irreparable harm. Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir.

2    2017). The Ninth Circuit has further recognized, in concrete terms, the irreparable harms "imposed

3    on anyone subject to immigration detention (or other forms of imprisonment)." Id. In the absence

4    of relief, "harms such as these will continue to occur needlessly on a daily basis" despite the

5    immigration court's finding that Petitioner's continued detention is not justified. Id. Petitioner thus

6    faces the irreparable harm of arbitrary detention without an injunction preventing Respondents

7    from continuing to prevent his release under § 1225(b)(2).

8                    iii.  *Balance of Equities and Public Interest*

9            The remaining two factors for a preliminary injunction—the balance of equities and public

10   interest—"merge" when the government is the opposing party. Baird v. Bonta, 81 F.4th 1036,

11   1040 (9th Cir. 2023) (quotations omitted). When "the impact of an injunction reaches beyond the

12   parties, carrying with it a potential for public consequences, the public interest will be relevant to

13   whether the district court grants the preliminary injunction." Hernandez, 872 F.3d at 996 (quoting

14   Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009)). The Ninth Circuit has recognized

15   that "neither equity nor the public's interest are furthered by allowing violations of federal law to

16   continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did

17   not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who

18   credibly alleged that the government was violating the INA).

19           The harm to the government here is minimal. While the Court recognizes the government's

20   interest in "preventing aliens from 'remain[ing] in the United States in violation of our law,'"

21   Rodriguez Diaz v. Garland, 53 F.4th 1189, 1208 (9th Cir. 2022) (citing Demore, 538 U.S. at 518),

22   and "protecting the public from dangerous criminal aliens," id. (citing Demore, 538 U.S. at 515),

23   the government has not explained how these interests are supported by *this* Petitioner's detention

24   while his removability is adjudicated. Due process requires the government to present "special

25   circumstances" justifying a noncitizen's continued detention, and Respondents present no such

26   justification: "once the flight risk justification evaporates, the only special circumstance [ ] present

27   is the alien's removable status itself, which bears no relation to a detainee's dangerousness."

28   Zadvydas, 553 U.S. at 691-92.

1    Moreover, by ordering Respondents to abide by the IJ's bond hearing determination that

2    Petitioner is not dangerous or a flight risk under § 1226(a)—a bond hearing process which is a part

3    of the government's normal operations—the government suffers no additional fiscal or

4    administrative burdens. Rather, limiting the use of immigration detention to only those noncitizens

5    who are dangerous or a flight risk serves the government and public interest by reducing the fiscal

6    and administrative burdens attendant to immigration detention. Hernandez, 872 F.3d at 996

7    (Noting in 2017 "the costs to the public of immigration detention are staggering: $158 each day

8    per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost

9    much less by comparison: between 17 cents and 17 dollars each day per person.").

10    In contrast, the hardships faced by Petitioner and the public interest in issuing an injunction

11    weigh strongly in his favor. Detention has separated Petitioner from his family, employment, and

12    community and imposed increased financial, caregiving, and emotional burdens on his wife and

13    three daughters. Hernandez, 872 F.3d at 996 ("in addition to the potential hardships facing [the

14    plaintiff] in the absence of the injunction, the court may consider the indirect hardship to their

15    friends and family members") (internal quotation marks and citation omitted). And because the

16    Court has found it is likely that Respondents are unlawfully detaining Petitioner under §

17    1225(b)(2), "neither equity or the public interest are furthered" by allowing Respondents' violation

18    of the INA to continue—quite the opposite. Galvez, 52 F.4th at 832.

19    As such, this Court finds the balance of the equities and public interest "tip sharply

20    towards" Petitioner. All. For the Wild Rockies, 632 F.3d at 1127. Therefore, even under a lesser

21    showing that Petitioner has raised only "serious questions going to the merits" of his challenge to

22    his detention under the INA and Due Process Clause, Petitioner is entitled to a preliminary

23    injunction. Id.

24    **D. Bond**

25    Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction

26    . . . only if the movant gives security in an amount that the court considers proper to pay the costs

27    and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.

28    R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court

1   with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d

2   1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In

3   particular, 'the district court may dispense with the filing of a bond when it concludes there is no

4   realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation

5   modified) (quoting Jorgensen, 320 F.3d at 919). Respondents do not argue that Petitioner's release

6   pursuant to the IJ's alternative bond determination would be costly, so the Court declines to set

7   bond beyond the amount imposed by the IJ.

8   **V.    CONCLUSION**

9       Based on the foregoing **IT IS HEREBY ORDERED** that Petitioner Bautista-Avalos'

10  (ECF No. 3) Motion for Preliminary Injunction is **GRANTED**. Pending a resolution of this matter

11  on the merits, Respondents are:

12      (1) **ORDERED** to release Petitioner from custody by **October 28, 2025 at 12:00 p.m.**

13          Petitioner shall be subject to the $3,500 bond and other conditions imposed by the

14          IJ's October 7, 2025 order;

15      (2) **ENJOINED** from denying Petitioner release on bond on the basis that he is subject

16          to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

17      **IT IS FURTHER ORDERED** that Petitioner shall have until **November 8, 2025** to satisfy

18  the bond conditions. If he does not satisfy them, he will be subject to rearrest and detention.

19

20      **DATED:** October 27, 2025.

21

22

23                              _____
                                **RICHARD F. BOULWARE, II**
24                              **UNITED STATES DISTRICT JUDGE**

25

26

27

28

- 11 -